IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NATASHA THOMAS | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff* | : | |
| | : | NO. 17-5194 |
| v. | : | |
| | : | |
| THE TRUSTEES OF THE | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| d/b/a The Presbyterian Medical | : | |
| Center of the University of | : | |
| Pennsylvania Health System | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                              JANUARY 23, 2020

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Natasha Thomas filed an amended complaint against Defendant The Trustees of the University of Pennsylvania d/b/a The Presbyterian Medical Center of the University of Pennsylvania Health System, in which she asserts claims of discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* [ECF 30]. Before this Court are Defendant's motion for summary judgment, [ECF 28], Plaintiff's response in opposition, [ECF 31], and Defendant's reply. [ECF 33]. The issues presented in this motion have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendant's motion for summary judgement is granted.

In addition, Plaintiff filed a motion for partial summary judgment, [ECF 27], to which Defendant filed a response in opposition, [ECF 32]. Plaintiff's motion will be addressed by separate Order.

**BACKGROUND**

In her amended complaint, Plaintiff asserts separate claims for discrimination, failure to accommodate, and retaliation under the ADA, as well as claims of discrimination and retaliation under the PHRA. Defendant moves for summary judgment in its favor on all claims. At the summary judgment stage, this Court must consider all relevant, supported facts in the light most favorable to the non-movant; here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:[1]

> Plaintiff commenced her employment with Defendant in 2008 and became a "resource nurse" (also called "pool nurse") in late 2015. [ECF 28-2 at 12]. The job description for the "resource nurse" position resource nurse requires the employee, *inter alia*, to continuously walk, stand, and lift, push, pull, or carry 25-plus pounds, and to frequently lift, push, pull, or carry 50-plus pounds. [*Id.* at 46-47, 71]. In practice, the daily requirements of the position vary from day-to-day, depending on the needs of the patients in a nurse's care. [ECF 31-6 at 2-7]. Resource nurses are qualified to be assigned—and can be assigned—to provide direct patient care as a nurse in any unit in the hospital. [ECF 28-2 at 18]. According to Defendant, the physical requirements of the job are the same no matter the department to which the nurse is assigned. [ECF 31-5 at 4].
>
> In October 2016, Plaintiff requested twelve weeks of medical leave under the Family Medical Leave Act ("FMLA") due to a pregnancy. [ECF 28-2 at 54]. In the following months, while out on FMLA leave, Plaintiff "suffered an injury to her ankle that impaired her ability to walk and stand for extended periods of time and to lift or carry." [ECF 31-1 at 4; ECF 31-2 at 4-5]. Plaintiff requested an extension of her leave as an accommodation under the ADA, indicating that the "expected duration of the disability" was "[p]ossibly 3 to 6 weeks." [ECF 27-10]. Plaintiff's physician had recommended that she avoid prolonged standing, walking, driving, lifting, and climbing "through at least January 21, 2017." [ECF 31-2 at 5]. Defendant granted Plaintiff the full extent of leave requested, through January 21, 2017. [*Id.*]. On January 16, 2017, shortly before her expected return to work date, Plaintiff requested and was again granted an extension of her medical leave through

---

[1]  The facts are taken from the parties' respective briefs, proffered statements of undisputed facts and cited supporting materials in the record. To the extent facts are disputed, such disputes are noted and, if material, construed in Plaintiff's favor. Facts asserted by a party and supported by the record which are uncontested by the other party, whether directly or by implication, are taken to be true. *See* Fed. R. Civ. P. 56(e).

January 31, 2017. [ECF 28-2 at 96]. A January 16, 2017 note from Plaintiff's doctor indicated that Plaintiff's period of disability would "continue through at least 1/31/17." [ECF 27-10]. Defendant set a February 1, 2017 deadline for Plaintiff to return to work. [ECF 28-2 at 96].

On February 1, 2017, Plaintiff submitted a note from her doctor requesting that she be allowed to return to work, however, with significant restrictions, *to wit*: "she must use her ankle brace while working, she should limit extended time standing on her feet and may require breaks to sit, must avoid use of ladders and lifting over 25 pounds." [*Id.* at 62-63]. In response, Defendant requested that Plaintiff fill out the provided "Employee Request for Reasonable Accommodation" form, and that if she needed additional leave, to use the form to request it. [ECF 28-2 at 73]. Plaintiff submitted said form on February 6, 2017, requesting an accommodation consistent with the physical restrictions indicated by her doctor. [*Id.* at 75]. Although a "physician inquiry form" submitted in mid-February indicated Plaintiff's doctor's "estimate" that her physical restrictions would expire on April 13, 2017, [*id.* at 77-78], Plaintiff's accommodation request form, submitted around the same time, indicated an expected disability duration of another "possibly 3 to 6 months." [ECF 28-2 at 75]. Throughout the month of February 2017, Defendant granted Plaintiff leave while it considered whether the physical restrictions she requested could be accommodated. [ECF 31-2 at 8].

In his deposition, Chief Nursing Officer Jim Ballinghoff testified that due to the unpredictability of patient needs and conditions, in his professional opinion, no nursing position existed at the hospital which Plaintiff could do with her restrictions. [ECF 31-5 at 10-11]. In light of this fact, as well as Ballinghoff's professional judgment and the uncertainty of Plaintiff's recovery date, Plaintiff's employment was terminated. [*Id.*; ECF 31-2 at 12]. Specifically, on March 2, 2017, Defendant sent Plaintiff a letter notifying her that her request for an accommodation was denied and that her employment was terminated. [ECF 28-2 at 80]. The letter also invited Plaintiff to notify her supervisor, Susan Chonko, "at the point of time you are cleared to return to work." [*Id.*]. Plaintiff never contacted Ms. Chonko. [ECF 31-2 at 13]. Notwithstanding this, on July 28, 2017, Defendant contacted Plaintiff to offer her a newly available resource nurse position, but Plaintiff rejected the offer. [ECF 31-2 at 13-14; ECF 28-2 at 82]. Three months later, Plaintiff filed this action against Defendant.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs the practice of summary judgment motions. Fed. R. Civ. P. 56. Specifically, this rule provides that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material"

3

if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. The court must view the evidence in the light most favorable to the non-moving party. *Galena*, 638 F.3d at 196 (3d Cir. 2011). A party is entitled to judgment as a matter of law if the evidence is so one-sided that one party must prevail. *Anderson*, 477 U.S. at 251–52.

The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotex*, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. *Anderson*, 477 U.S. at 249–50. In order to defeat a motion for summary judgment, there must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999). By evidence, Rule 56

means "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49.

**DISCUSSION**

In her amended complaint, Plaintiff avers that Defendant discriminated against her on the basis of her disability, failed to accommodate her disability, and retaliated against her for having requested accommodations. Defendant denies these accusations and argues that it is entitled to summary judgment because Plaintiff has failed to produce sufficient evidence to establish a *prima facie* showing for her claims. This Court agrees with Defendant and will address each claim separately.

*Discrimination*[2]

Plaintiff argues that at the time of her termination, she was a qualified disabled individual as defined by the ADA and that the circumstances surrounding her termination violated the ADA.

---

[2] Except where noted, the foregoing analysis focuses on Plaintiff's ADA claims but applies with equal force to her PHRA claims, since the ADA and PHRA "serve the same goals" and may be interpreted "coextensively." *Scarborough v. Cent. Bucks Sch. Dist.*, 632 F. App'x 80, 82 (3d Cir. 2015) (quotations omitted); *see also Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (observing that "[t]he PHRA and the ADA are basically the same . . . in relevant respects[,] and Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.") (internal quotations and citations omitted). Further, all of Plaintiff's claims are subject to the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Aptaker v. Bucks Cty. Intermediate Unit No. 22*, 2015 WL 5178183, at *8 (E.D. Pa. Sep. 3, 2015) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999)). However, since Plaintiff fails to establish a *prima facie* case for any of her claims, only the first step of the *McDonnell Douglas* framework is analyzed. *See id.* ("Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case").

5

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge[.]" 42 U.S.C. § 12112. To establish a *prima facie* case of discrimination under the ADA, "a plaintiff must show (1) that [s]he is disabled within the meaning of the ADA, (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [s]he was subjected to an adverse employment decision as a result of discrimination." *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 48 (3d Cir. 2017) (quoting *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010)). Under the ADA, a plaintiff can satisfy the third element either by showing that an adverse employment action was taken *because of* her disability or, alternatively, by showing that her employer failed to make reasonable accommodations for her known physical and/or mental limitations, "unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business[.]" *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504-05 (3d Cir. 2010) (internal quotations omitted); 42 U.S.C. § 12112. In her amended complaint, Plaintiff appears to pursue both a "discrimination" claim and a "failure-to-accommodate" claim. However, in her response to Defendant's motion, she does not challenge Defendant's contention that she "has failed to produce any evidence whatsoever that she was terminated *because of* an actual or perceived physical or mental impairment." [ECF 28-1 at 31]. As such, this Court finds that Plaintiff has sought to prove discrimination exclusively by showing that Defendant failed to make reasonable accommodations, and will analyze her arguments to that effect as a single, "discrimination" claim. Defendant argues that Plaintiff cannot prove any of the elements of such a claim. This Court will address each element in turn.

*1. Disabled*

Under the ADA, a person, such as Plaintiff, is disabled if she has "(A) a physical or mental impairment that substantially limits one or more major life activities[;] (B) a record of such an impairment; or (C) [is] regarded as having such an impairment[.]" 42 USC § 12102(1). Defendant argues that Plaintiff is not disabled under this definition because her injury had only short-term effects. As to this specific argument, Defendant is wrong.

"The ADA, and its definition of disability, was amended in 2008, with the amendments effective of January 1, 2009." *McDonald v. Pa. State Police*, 532 F. App'x 176, 176 n.1 (3d Cir. 2013). "With these amendments, Congress directed courts to interpret the term 'disability' broadly 'to the maximum extent permitted'" by the statute's terms. *Ostrowski v. Con-Way Freight, Inc.*, 543 F. App'x 128, 131 (3d Cir. 2013) (quoting 42 U.S.C. § 12102(4)(A)). The ADA Amendments Act ("ADAAA") was enacted, *inter alia*, to clarify the definition of disability "[i]n the wake of Supreme Court decisions and EEOC regulations construing 'disability' to mean only 'permanent or long-term impairments.'" *Matthews v. Pa. Dep't of Corrections*, 613 F. App'x 163, 167 (3d Cir. 2015). While the United States Court of Appeals for the Third Circuit ("Third Circuit") "has not yet interpreted the ADAAA's effect on short-term-disability-based claims," it has acknowledged that the updated EEOC regulations under the amended ADA "provide that impairments lasting fewer than six months may be substantially limiting." *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(ix)). In other words, under the amended ADA, an impairment's short duration is not outcome-determinative. 29 C.F.R. § 1630.2(j)(1)(ix). "[T]he duration of an impairment is just one factor to consider in determining whether an impairment substantially limits a major life activity." *Matthews*, 613 F. App'x at 167-68.

Notwithstanding the updated regulations, Defendant cites to post-ADAAA opinions of several courts in this district for the proposition that temporary impairments are not covered under the amended ADA. [ECF 28-1 at 17]. The courts which have so held, however, have relied (directly and indirectly) on the Third Circuit's holding in *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266 (3d Cir. 2012) that "a temporary, non-chronic impairment of short duration is not a disability covered under the ADA." *Id.* at 274. In *Macfarlan*, the Third Circuit held that a 20-pound lifting restriction, "removed only four months after first imposed, [is] the very definition of . . . a non-chronic impairment" not covered by the ADA. *Id.* Several factors, however, suggest that *Macfarlan* was an intentional application of the *pre*-amendment ADA standard and that, therefore, it is inapposite here. For one, *Macfarlan* evaluated a disability claim based on an impairment and adverse employment action that *predated* the implementation of the ADAAA—indeed, despite its 2012 publication date, *Macfarlan*'s ADA analysis makes no mention of the amended act and exclusively references pre-amendment caselaw.[3] In addition, a Third Circuit panel observed in 2015—three years after *Macfarlan*—that the Third Circuit had "not yet interpreted the ADAAA's effect on short-term-disability-based claims." *Matthews*, 613 F. App'x at 168. Finally, *Macfarlan* would seem to directly contradict the explicit language of the updated EEOC regulations.[4] In light of these strong indicators that *Macfarlan* was *not* an interpretation of the amended statute, this Court declines to apply *Macfarlan*'s categorical rejection of "temporary,

---

[3] The plaintiff in *Macfarlan* had a stroke in January 2008 and was terminated in April 2008. *Macfarlan*, 675 F.3d at 269. The ADAAA took effect on January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008) ("This Act and the amendments made by this Act shall become effective on January 1, 2009.").

[4] *See, e.g.*, 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.").

non-chronic impairment[s] of short duration" to the claim *sub judice*. Therefore, to the extent that Defendant asserts that Plaintiff was *per se* not disabled under the amended ADA because of her impairment's short duration, such argument fails.[5] *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 333 (4th Cir. 2014) ("Under the ADAAA and its implementing regulations, an impairment is not categorically excluded from being a disability simply because it is temporary.").

Unlike the ADA, however, the PHRA has not been amended to explicitly include short-term impairments. Prior to the enactment of the amendments, the ADA and PHRA "had substantially similar definitions of 'disability.'" *Sowell v. Kelly Servs.*, 139 F. Supp. 3d 684, 704 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). As noted, the ADAAA "relaxed the standard for determining what qualifies as a disability under the ADA." *Berkowitz v. Oppenheimer Precision Prods.*, 2014 WL 5461515, at *7 (E.D. Pa. Oct. 28, 2014). In the wake of the ADA's amendment, the majority of courts in this district have concluded "that because the Pennsylvania legislature has not enacted a similar amendment to the PHRA, the disability prong of a discrimination analysis under the PHRA should be analyzed in the same manner as pre-ADAAA claims." *Id.* This Court agrees. Under the pre-amendment ADA, "temporary, non-chronic impairment[s] of short duration," such as in Plaintiff's case, were not covered. *Rinehimer v. Cemcolift*, 292 F.3d 375, 380 (3d Cir. 2002). Under this standard, Defendant's duration-focused argument is correct and, therefore, relief is unavailable to Plaintiff under the PHRA. Accordingly, summary judgment is granted with respect to Plaintiff's PHRA disability discrimination claim. For clarity, Plaintiff's ADA claims are not foreclosed simply because of her impairment's short-

---

[5] This Court notes that plaintiffs proceeding on a theory that they were "regarded as having" an impairment, under 42 U.S.C. § 12102(1)(C), are ineligible for relief under the ADA if the claimed impairment lasted six months or less. 42 U.S.C. § 12102(3)(B).

9

lived duration.  Notably, Defendant makes no other argument as to how Plaintiff's injury did not substantially limit her ability to engage in any major life activity.

## 2. *Qualified*

To establish the second element of a discrimination claim, Plaintiff must demonstrate that she is a "qualified individual."  The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111.  Courts have frequently divided this inquiry into two parts: first, evaluating whether the plaintiff "has the requisite skill, experience, education and other job-related requirements" of the held or desired position, and second, whether the plaintiff, "with or without reasonable accommodation, can perform the essential functions of the position."  *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. § 1630.2); *see also Albright v. Trs. of the Univ. of Pa.*, 2019 WL 5290541, at *5 (E.D. Pa. Oct. 18, 2019).

Here, Defendant does not dispute that Plaintiff meets the first prong of the analysis—she possessed the requisite skill, experience, or education for the job.  Instead, Defendant contends that the undisputed evidence shows that at the time Plaintiff's employment was terminated, she could not perform the *essential functions* of her job.  Plaintiff disagrees and argues that she could have performed these essential functions with reasonable accommodation.

"In general terms, the 'essential functions' of a position are the 'fundamental job duties,' as opposed to the 'marginal functions.'"  *Supinski v. UPS*, 413 F. App'x 536, 540 (3d Cir. 2011) (quoting 29 C.F.R. § 1630.2(n)(1)).  The Third Circuit has "repeatedly recognized" that "whether a particular function is essential 'is a factual determination that must be made on a case-by-case

basis [based on] all relevant evidence.'" *Id.* (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998)). Evidence that a particular job function is essential may include:

>   (i)     The employer's judgment as to which functions are essential;
>   (ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
>   (iii)   The amount of time spent on the job performing the function;
>   (iv)    The consequences of not requiring the incumbent to perform the function;
>   (v)     The terms of a collective bargaining agreement;
>   (vi)    The work experience of past incumbents in the job; and/or
>   (vii)   The current work experience of incumbents in similar jobs.

*Id.* (quoting 29 C.F.R. § 1630.2(n)(3)). "[T]he employer 'has the burden of showing a particular job function is an essential function of the job.'" *Id.* (quoting *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007)). While "the inquiry into essential functions is not intended to second guess an employer's business judgment," an employer "will have to show that it actually imposes such requirements in fact, and not simply on paper." *Id.* (quoting 29 C.F.R. pt. 1630, app. § 1630.2(n)).

Here, Defendant argues that the "physical demands" of the resource nurse position, which include continuous walking, standing, and lifting/pushing/pulling/carrying of more than 25 pounds, are essential functions of the position. [ECF 28-1 at 5]. For support, Defendant principally relies on the official position description which identifies walking, standing, and lifting/pushing/pulling/carrying more than 25 pounds as "continuous" requirements, defined as being necessary more than 67% of the time, and lifting/pushing/pulling/carrying more than 50 pounds as a "frequent" requirement, defined as being necessary 34-55% of the time. Plaintiff acknowledged that these frequencies are consistent with her experience at the hospital, [*id.* at 46-47], and that her injury would make it difficult for her to carry out her duties. For example, in a December 21, 2016 email to her doctor, Plaintiff wrote:

> It would seem that my current condition following my right ankle injury would make it difficult to resume my *regular* work requirements as a bedside nurse. My current physical therapy results further make me question my ability to fulfill the

11

> *daily* requirements of my position . . . I know that I would not be able to tolerate my *typical* 12 hour shifts in my current condition.

[*Id.* at 111] (emphasis added).

As additional evidence, Defendant cites to the testimony of Chief Nursing Officer Ballinghoff, who proffered, *inter alia*, that the precise requirements of a resource nurse "can vary from minute to minute, hour to hour," since patient conditions change suddenly and without warning. [ECF 28-2 at 20]. As an example, Ballinghoff testified that, if a patient begins to faint, "you need to be able to catch them and support them," even if no human or mechanical help is available. [*Id.*]. "That's not an opportunity to ask somebody to accompany you. It just happens[.]" [*Id.* at 21]. Further, according to Plaintiff's supervisor, Susan Chonko, one "can't predict what kind of clinical situation a nurse is going to be in, and the unexpected is very expected." [*Id.* at 91]. These ready-for-anything requirements apply to all nurses, regardless of the unit to which they are assigned. [*Id.* at 20]. Because resource nurses are assigned to attend to the various needs of patients across the hospital, and because those needs are equally unpredictable in the various departments, Defendant contends that it is essential that resource nurses *be able to* walk, stand, and lift more than 25 pounds often and at any moment, even if, on occasion, assignments may require these activities less frequently.

Plaintiff does not directly challenge this evidence. Rather, she obliquely implies that the physical requirements are not *essential* functions and admits, "solely that the written job description contains these physical demands." Plaintiff maintains that she "could have performed the role of resource nurse" had she been (a) assigned to light duty "working in the telemetry room, doing patient interviews, or doing chart reviews"; (b) granted accommodations "such as having other employees assist her with lifting patients and assigning her to patients in rooms with mechanical lifts"; or (c) given leave until her injuries healed. [ECF 31-2 at 7]. Plaintiff does *not*

argue that resource nurses do not actually have to engage in the function of continuous walking, standing, and lifting. Nevertheless, she attempts to create a dispute of material fact as to the job's "essential functions" by citing the following evidence:

(i) her own testimony that "one night" she was assigned to a telemetry room (which on that occasion did not require walking, standing, or lifting), and that nurses generally were not expected to lift above 35 pounds, [ECF 31-4 at 2, 9-10];

(ii) Ballinghoff's selected testimony that, in the past, nurses who had been hurt on the job had been approved for temporary "light duty," that it is "best practice" for nurses to help one another lift patients, and that machine lifts are available on every floor of the hospital, [ECF 31-5 at 4-7]; and

(iii) Chonko's testimony that it is best practice for nurses to help each other with heavy lifting, and that machine lifts are available, [ECF 31-6 at 52:15-55:14].

Ballinghoff clarified, however, that nurses assigned to the telemetry unit cannot count on more sitting more often than nurses assigned to other units, that "the physical demands of the position are the same no matter which unit you are assigned to," and that he could not recall any resource nurses who had been given light duty. [ECF 31-5 at 4, 6].

Based on the aforementioned evidence, this Court finds that the ability to continuously walk, stand, and lift over 25 pounds are essential functions of the resource nurse position. The facts that resource nurses may occasionally be assigned shifts that may not require these activities, and that they are encouraged to lift patients with assistance when possible, do not themselves create an issue of fact as to whether walking, standing, and lifting over 25 pounds are essential functions of the position. *See Acevedo v. City of Phila.*, 680 F. Supp. 2d 716, 734-35 (E.D. Pa. 2010) (observing that courts have repeatedly recognized that "an essential function need not encompass

13

the majority of an employee's time, or even a significant quantity of time to be essential.") (internal quotations omitted) (collecting cases); *accord EEOC v. LHC Group, Inc.*, 773 F.3d 688, 698 (5th Cir. 2014) (affirming district court's conclusion that where a field nurse spent "probably a couple of hours" of her eight-hour day driving to patient homes, driving was an essential function of the position).

As noted, to establish a *prima facie* case of discrimination under the ADA, Plaintiff must show that she was able to perform the job with or without reasonable accommodation. Clearly, Plaintiff could not perform the essential functions of her position without accommodation. Plaintiff insists, though, that she could have performed them *with* reasonable accommodations. Specifically, Plaintiff argues that Defendant could have enabled Plaintiff to return successfully to work by either (a) assigning her to desk duty with no lifting requirements, (b) assigning other nurses to assist Plaintiff with lifting when necessary, or (c) granting Plaintiff unpaid leave until April 13, 2017, when her doctor estimated that her physical restrictions could be lifted.

The ADA did not require Defendant to assign Plaintiff to "light duty." In addition to the fact that such an assignment might well have been factually impossible, it is well-settled that employers need not exempt employees from performing essential functions of their jobs. *Supinski*, 413 F. App'x at 542 (citing 29 C.F.R. pt. 1630, app. § 1630.2(o)); *see also Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 285 n.4 (3d Cir. 2001) ("employers are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid it")). The ADA similarly did not require Defendant to assign other nurses to assist Plaintiff. *Snowden v. Trs. of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015) (affirming holding that employers need not assign other employees to help with execution of essential function since "such an accommodation constitutes an elimination of [the] essential function."); *Schmeichel v. Installed Bldg. Prods., LLC*,

2018 WL 6171750, at *8 (W.D.N.Y. Nov. 26, 2018) ("Courts have . . . reject[ed] employees' claims that employers should be required to provide assistants to lift items.") (collecting cases). As such, Plaintiff's suggested on-site accommodations were not reasonable accommodations.

As for Plaintiff's suggested accommodation of leave through April 2017, this Court finds that, under the circumstances, such leave could not reasonably have been expected to enable Plaintiff to perform the essential functions of her job. This finding is due in no small part to Plaintiff's inconsistent communication regarding her timeline for recovery—Plaintiff's doctor repeatedly extended his estimation for her recovery, and in early February 2017, Plaintiff submitted forms that simultaneously predicted that she would recover by April 2017, on one form, and "possibly" within "3 to 6 months" on another. Plaintiff never actually requested leave through April, and her argument now that Defendant should have been able to determine a more precise recovery timeline on its own is misplaced. *Accord Santandreu v. Miami Dade Cty.*, 513 F. App'x 902, 905 (11th Cir. 2013) ("[T]he ADA does not require an employer to provide leave for an indefinite period of time because an employee is uncertain about the duration of his condition."); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 466 (4th Cir. 2012) ("A reasonable accommodation . . . is by its terms most logically construed as that which presently, or in the *immediate future*, enables the employee to perform the essential functions of the job in question.") (internal quotations omitted) (emphasis added).

Moreover, in its March 2017 termination letter, Defendant requested that Plaintiff contact Defendant as soon as she recovered, yet she never did. Despite Plaintiff's lack of contact, Defendant reached out to Plaintiff in July 2017 to offer her an available resource nurse position, yet Plaintiff declined the offer. Under these circumstances, it cannot be reasonably concluded that an additional month of leave would have allowed Plaintiff to fulfill the essential functions of her

15

position. Thus, at the time of Plaintiff's termination, this Court finds that she was unable to perform the essential functions of her job, with or without reasonable accommodation.

### 3. Adverse Employment Action

Notwithstanding this Court's finding that Plaintiff did not meet her burden of proof as to being able to perform the essential functions of her job, this Court will also address whether Plaintiff can meet her burden as to the third element of her ADA discrimination claim. To establish this element, Plaintiff must show that she has "suffered an otherwise adverse employment decision as a result of discrimination." *Diaz v. City of Phila.*, 565 F. App'x 102, 105 (3d Cir. 2014). As noted, "adverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities." *Aubrey v. City of Bethlehem, Fire Dept.*, 466 F. App'x 88, 93 (3d Cir. 2012). "[R]easonable accommodation further includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith," through what has come to be known as the "interactive process." *Colwell*, 602 F.3d at 504 (internal quotations omitted). Under the ADA's implementing regulations, the "interactive process" should be an "informal" exchange in which employers and employees work together to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(iii)(3). As the Third Circuit has explained:

> When the interactive process works well, it furthers the purposes of the . . . ADA. The employers will not always know what kind of work the worker with the disability can do, and conversely, the worker may not be aware of the range of available employment opportunities . . . . Thus, the interactive process may often lead to the identification of a suitable position. If it turns out there is no job which the worker (with or without accommodation) is capable of performing, then the company cannot be held liable for an ADA . . . violation.

16

*Shapiro v. Twp. of Lakewood*, 292 F.3d 356, 359 (3d Cir. 2002) (quoting *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997)). Defendant argues that Plaintiff cannot show that Defendant failed to engage in the required interactive process in good faith. This Court agrees.

When Plaintiff first informed Defendant of her injury and requested additional leave as an accommodation, Defendant granted her request. When she requested an additional extension, Defendant *again* granted her request. When she submitted a list of doctor-prescribed physical restrictions at the time of her anticipated return, Defendant interpreted the restrictions as a new request for accommodation and provided Plaintiff with an additional month of medical leave while it worked to determine if it could accommodate the request. Finding no "light duty" positions available, and unable to be certain about Plaintiff's everchanging recovery timeline, Defendant terminated Plaintiff with an invitation to resume contact once her condition improved sufficiently for her to return. Plaintiff never notified Defendant that she recovered. Nevertheless, in July 2017, Defendant offered Plaintiff the first resource nurse position available after her termination. Plaintiff declined the offer. In light of these circumstances, this Court finds that Defendant engaged in the interactive process entirely in good faith by repeatedly working with Plaintiff to accommodate her impairment. Therefore, this Court therefore finds that Plaintiff has not produced evidence sufficient to establish the third prong of her ADA discrimination claim, and Defendant's motion for summary judgment is granted with respect to this claim.

*Retaliation*

Plaintiff also claims that Defendant retaliated against her for requesting accommodations for her disability. To prove retaliation under the ADA and PHRA,[6] "an employee must show 1)

---

[6] Because the PHRA protects plaintiffs against retaliation for engaging in a protected activity regardless of their disability status, the short-term nature of Plaintiff's impairment does not foreclose her ability to recover for retaliation under the PHRA.

she engaged in a protected activity; 2) the employer took adverse action; and 3) a causal connection." *Castellani v. Bucks Cty. Municipality*, 351 F. App'x 774, 777 (3d Cir. 2009) (citing *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567-68 (3d Cir. 2002)). If an employee establishes a *prima facie* case, the employer must give a legitimate, nondiscriminatory reason for the termination. If the employer meets its burden, the burden then shifts to the employee to show that the employer's reason is pretext. *Id.* (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)).

In its motion, Defendant argues that Plaintiff has "produced no evidence in support of [her] claim" that she was retaliated against for requesting an accommodation, noting that it repeatedly granted Plaintiff's leave requests and subsequently offered to rehire her. In the response, Plaintiff omits any mention of this retaliation claim and fails to challenge Defendant's arguments. This Court notes that in Plaintiff's motion for partial summary judgement, she remarks that "a genuine issue of material fact exists" as to her retaliation claims; however, she makes no attempt in any of her filings to "cit[e] to particular parts of materials in the record" for support, as is required at the summary judgment stage. Fed. R. Civ. P. 56(c). As such, Defendant's motion for summary judgment is granted with respect to this claim.

**CONCLUSION**

For the forgoing reasons, Defendant's motion for summary judgment is granted. Accordingly, judgment on all claims is entered in favor of Defendant. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C.J.